1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SUKHJINDER SINGH,

                    Petitioner,

        v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

                    Respondents.

Case No. C19-1224-JLR-MAT

REPORT AND RECOMMENDATION

## I.        INTRODUCTION

Petitioner, a native and citizen of India, brings this 28 U.S.C. § 2241 immigration habeas action to challenge his expedited removal order and continued detention at the Northwest Detention Center in Tacoma, Washington.  (*See* Dkt. 2.)  The Court stayed his removal pending adjudication of his claims.  (*See* Dkt. 4.)  The Government has filed a return memorandum and motion to dismiss, which petitioner opposes.  (*See* Dkts. 6, 12, 13.)  Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED, petitioner's habeas petition be DENIED, the stay of removal be VACATED, and this action be DISMISSED with prejudice.

REPORT AND RECOMMENDATION - 1

## II.    BACKGROUND

A.    Facts

Petitioner lived in Canada from 2017 until June 2019.  (Dkt. 7-3; Dkt. 11 at 2.)  In March 2019, petitioner applied from Canada for a visa to enter the United States as a non-immigrant. (Dkt. 7-1.)  Among other things, petitioner indicated on the application that he was married, he was a general farm worker for Valley Select Foods Inc. in Abbotsford, British Columbia, and no one assisted him in filling out the application.  (*See id.*)  The United States denied petitioner's visa application in April 2019.  (Dkt. 7-3 at 2.)

On June 25, 2019, petitioner entered the United States illegally by crossing the Canadian border without inspection near Sumas, Washington.  (*Id.* at 2-3.)  U.S. Customs and Border Patrol ("CBP") agents arrested him just south of the border and transported him to the Sumas Border Patrol Station.  (*Id.*)  At the station, a CBP agent interviewed him under oath in Punjabi, his native language.  (Dkt. 10.)  Petitioner reported he left Canada because he had relatives there who were threatening to kill him.  (*Id.* at 2.)  When asked why he did not contact the police in Canada, petitioner replied, "I tried but they said that I would get in trouble, and the police wouldn't help me because my visa was going to expire."  (*Id.* at 3.)  Petitioner stated that he feared returning to India because "[m]y uncle wants to kill me because he wants my property."  (*Id.*)  When asked if there was anything else he would like to say, petitioner replied, "no."  (*Id.* at 4.)  The CBP agent found that petitioner "was dismissive and was not truthful with his answers during his interview." (Dkt. 7-3 at 3.)

The CBP agent processed petitioner for expedited removal under 8 U.S.C. § 1225(b)(1) and referred him for an interview with a U.S. Citizenship and Immigration Services ("USCIS") asylum officer ("AO").  (*Id.* at 3.)  He was served with a copy of his sworn statement (Dkt. 10),

his expedited removal order (Dkt. 7-10), and Form M-444, which provided information about his upcoming credible fear interview and a list of pro bono legal service providers (Dkt. 7-4). (Dkt. 7-3 at 3.) He was then transferred to U.S. Immigration and Customs Enforcement ("ICE") custody at the Northwest Detention Center in Tacoma, Washington. (*Id.* at 4.)

On July 12, 2019, petitioner had a credible fear interview with an AO. (*See* Dkt. 11 (AO's Interview Notes[1]).) The AO interviewed petitioner under oath via telephone with a Punjabi translator. (*Id.* at 1-2.) Responding to questions from the AO, petitioner stated that he did not have an attorney and wished to proceed with the interview knowing he had the right to have an attorney or consultant present. (*Id.*)

The AO began by asking petitioner about his immigration history, including his March 2019 visa application. (*Id.* at 2-3.) Petitioner stated that everything on his visa application was true and correct. (*Id.* at 3.) During questioning, however, he disclosed that he is single, has never been married, and misrepresented his marital status on his U.S. visa application so it would match his Canadian visa application, which also falsely stated he was married. (*Id.* at 3-4.) Petitioner stated he lied on his Canadian application because he believed Canada was more likely to approve his visa request if he reported being married. (*Id.* at 4.) Petitioner also admitted that he did not work while in Canada. (*Id.* at 3.) When the AO asked why he stated on his visa application that he worked for Valley Select Foods, petitioner responded, "I was so afraid because there had been so many things against me." (*Id.* at 4.) Finally, petitioner admitted he had help completing the application from "the baba" "in the temple in the gurdwara." (*Id.* at 3.)

The AO next asked why petitioner left Canada. (*Id.* at 4.) Petitioner explained that a man who attacked him in India was living in Canada and was going to attack him because he had

---

[1] The AO's interview notes are not a verbatim transcript but provide the AO's contemporaneous account of the questions and answers. (*See* Dkt. 11 at 1.)

worked for the Mann Party in India. (*Id.*) The AO asked about the identity of the man, and petitioner stated the man was not a "real paternal uncle but he was called a paternal." (*Id.*) The AO asked, "So he all of a sudden got to Canada?" and petitioner responded that the man had been living there for ten years. (*Id.*) The AO asked if the man attacked him in India, and petitioner stated the man's father had attacked him. (*Id.*) The AO asked, "So did this guy attack you in Canada any time in the two years?" and petitioner responded, "Yes, I will tell you clearly." (*Id.*) The AO then changed the subject, asking, "Who is Amarjit Kaur?" (*Id.* at 5.) The AO explained that Ms. Kaur had tried to file a petition on petitioner's behalf to lawfully bring him into the United States. (*Id.*) Petitioner denied knowing Ms. Kaur or of her efforts to gain him lawful entry to the country. (*Id.*)

The AO then turned the interview to petitioner's credible fear claim and the past harm he allegedly suffered in India. (*Id.*) Petitioner testified he was attacked because he was working for the Mann Party, which his father also supported. (*Id.*) Petitioner testified he began working for the party on January 20, 2015. (*Id.*) The following exchange then occurred regarding the Mann Party:

> Q. What is this party's goal or political ideologies?
> A. Meaning what?
>
> Q. What are they fighting for?
> A. [T]hey want that what has been done wrong to correct that[.]
>
> Q. What has been done wrong?
> A. Ok like our Sikh people have been disrespected. And when those pages were torn I felt very bad. Simranjit Singh Mann they did a protest[.]
>
> Q. Ok what [are] the Mann party's main political ideologies?
> A. They want [there to be peace in India and for poor children to get a] good education in school.
>
> Q. So is there a main goal for the Mann party?
> A. [T]heir goal is that nobody should be forced that there should [be] justice[.]

REPORT AND RECOMMENDATION - 4

Q. That is very vague.  Can you give me any other main goal or ideology for the Mann party?
A. Their big goal is the needs the people have when the party gets big we will put those needs in front of the [government].

Q. Any other goals or ideologies?
A. To make big schools and big hospitals[.]

Q. How about in the past did the Mann party have any goals or ideologies?
A. Abroad the boys who would die get stuck abroad [and] sometimes their bod[ies] would not come [home.]

Q. Actually the main goal and ideology of the Mann party is the formation of Khalistan.  Do you know what that is?
A. No they don't want to make that[.]

Q. No the Mann party doesn't?
A. No the Mann party doesn't want to make that[;] they consider everyone to be equal[.]

Q. Did they used to want the formation of Khalistan?
A. No since their formation they never wanted Khalistan[.]

Q. Actually one of the main reasons why this party was formed was for an independent Khalistan.  You were a worker for the party since 2015 is there a reason why you don't know this?
A. No I don't know what Khalistan is.  This party alleged they don't want to make Khalistan[.]

(*Id.* at 5-6 (alterations added).)

The AO then asked who harmed petitioner in India, and petitioner replied that the Bharatiya Janata Party ("BJP"), the police, and the Indian National Congress Party ("Congress") had harmed him.  (*Id.* at 6.)  The AO asked how they harmed him.  (*Id.*)  Petitioner responded that on August 6, 2016, he was putting up political posters in his city when five men approached him and told him to leave the Mann Party.  (*Id.*)  When petitioner refused, the men attacked, slapping his face and head and then throwing him to the ground and kicking him.  (*Id.*)  The incident ended when pedestrians approached.  (*Id.*)  The AO asked if anyone else harmed him in India, and he responded

REPORT AND RECOMMENDATION - 5

that the police and members of Congress harmed him because he worked for the Mann Party. (*Id.*) The AO then asked if there were any other reasons why people harmed him in India. (*Id.*) He responded that he has land in India where they hold political rallies, and the other parties do not have a place to hold such rallies, so his uncle told the other parties to attack him. (*Id.*)

In answer to questions the AO asked, petitioner stated he believed the police and government would kill him if he returned to India because he is a Mann Party worker and because of the land he owns. (*Id.* at 7. ) The AO asked if anyone in the government could protect petitioner, and he responded, "No the [government] wants to kill me." (*Id.*) The AO asked if petitioner could live safely anywhere else in India, and he stated that he had tried and would not be able to do so. (*Id.*)

The AO then asked several follow up questions related to the credibility of petitioner's testimony:

> Q. When you initially spoke with U.S. Border Patrol, they asked you if you were afraid to return to your country, and you said you will be killed for your property. Why did you not tell them you will be killed because of your party affiliation?
> A. I did not think the police [would] apprehend me. And I remember[ed] about India that the police [are] going to beat me. And I also somehow did not understand the question[.]
>
> Q. Is there any reason why you didn't tell them you were afraid to go back because of your party affiliation?
> A. They asked me [why I was in danger] in India. And I said my paternal uncle belongs to the party because I told [them] my paternal uncle's name [and] his son in Canada Harpreet Singh they asked me also and the US doesn't bother anybody[.]
>
> *****
> Q. What you said earlier [about] the Mann party never wanting the formation of Khalistan is factually incorrect. If you were a supporter of the Mann party, why would you say that?
> A. Because Mr. Mann has never said that[.]

(*Id.* at 8 (alterations added).) The AO asked petitioner whether there was anything he wanted to add about his credible fear claim that he had not yet reported, and petitioner stated, "No." (*Id.*)

1    Petitioner also confirmed that he understood the AO's questions and the interpreter.  (*Id.*)  The AO

2    then summarized petitioner's testimony and asked petitioner whether anything needed to be

3    changed or added.  (*Id.* at 7-8.)  Petitioner stated the summary was correct.  (*Id.*)

4           Following the interview, the AO determined petitioner lacked credibility and had not

5    shown a credible fear of persecution if he were returned to India.  (Dkt. 7-6 at 4; Dkt. 7-7; Dkt. 14-

6    1.)  The AO recorded his reasoning on the Credible Fear Determination Checklist, an internal

7    document provided to USCIS supervisors and the immigration judge ("IJ") prior to petitioner's

8    credible fear review hearing ("Review Hearing") (but not to petitioner).  (Dkt. 14-1; Dkt. 14 at ¶¶

9    4-5 (Declaration of USCIS Section Chief Drew Sieminski explaining purpose of Credible Fear

10   Determination Checklist).)  The AO explained that petitioner's testimony was not credible because

11   it was inconsistent with country condition reports indicating that the Mann Party advocates for an

12   independent Khalistan.  (Dkt. 14-1 at 1 (quoting Mr. Mann as stating, "Everyone has heard that

13   the Sikh community has just one demand, i.e., Khalistan . . .").)  The AO further explained:

14          The applicant's explanations are unreasonable as he has been a worker for the Mann
             party since 2015 and even has family who supports the Mann party.  With all of
15          this experience with the party, it is unreasonable for the application to get factual
             evidence wrong, especially about a main political agenda of the Mann Party.
16          Testimony regarding this inconsistency is relevant to the applicant's claim as it calls
             into question whether or not he supported the Mann Party, which further calls into
17          question whether or not he was actually harmed.

18   (*Id.*)  The AO also found that petitioner's testimony was "inconsistent with government records,

19   mainly his US visa application."  (*Id.* at 2.)  The AO highlighted petitioner's inconsistent testimony

20   regarding his marital status, work history in Canada, and help he received completing his visa

21   application.  (*Id.*)  The AO further observed that government records indicate Ms. Kaur, who filed

22   a petition on behalf of petitioner and whom petitioner claimed not to know, is in fact petitioner's

23   sister.  (*Id.*)  The AO noted that these inconsistences were not material to petitioner's claim of fear

but considered them as part of the totality of the circumstances bearing on credibility because they were "relevant under the REAL ID Act when an applicant is asking the adjudicator to accept an account at face value and are probative of the truthfulness of more material aspects of an applicant's account, making the entire claim suspect." (*Id.*)

On or about July 16, 2019, USCIS served petitioner with copies of Form I-870, Record of Determination/Credible Fear Worksheet (Dkt. 7-6); Form I-869, Record of Negative Credible Fear Finding and Request for Review by Immigration Judge (Dkt. 7-7); and Form I-863, Notice of Referral to Immigration Judge (Dkt. 7-8). (Dkt. 2 at ¶ 14.) On Form I-870, the AO checked boxes indicating that petitioner was found not credible, that a credible fear of persecution was not established, and that petitioner's identity was determined with a reasonable degree of certainty based on petitioner's own credible statements. (Dkt. 7-6 at 4.) The AO did not explain the basis for the negative credibility determination or indicate whether he found a nexus between petitioner's alleged fear and a qualifying category (race, religion, political opinion, etc.). (*Id.*) Petitioner requested review by an IJ. (Dkts. 7-7, 7-8.) At or before the Review Hearing, USCIS served petitioner with a copy of the AO's credible fear interview notes. (Dkt. 2 at ¶ 14; Dkt. 11.) Also before the hearing, USCIS provided the IJ with a copy of the AO's Credible Fear Determination Checklist. (Dkt. 14 at ¶ 6.)

On July 22, 2019, petitioner appeared before an IJ for his Review Hearing and was represented by an attorney. (Dkt. 7-9 (Cert. of Svc. Indicating personal service on petitioner's attorney or representative); Dkt. 2 at 5-6.) After taking testimony from petitioner and reviewing the record, the IJ affirmed the AO's decision and returned the case to the U.S. Department of Homeland Security ("DHS") to execute petitioner's expedited removal order. (*See* Dkts. 7-9, 7-

10.)  A DHS official served petitioner with his expedited removal order on July 26, 2019.  (Dkt. 7-10.)

B.    Procedural History

On August 6, 2019, petitioner initiated the instant action and filed a motion seeking a stay of removal, which the Court granted.  (Dkts. 1, 2, 4.)  In his habeas petition, he makes a number of general allegations, including that the procedures leading to his expedited removal order violated his Fourth and Fifth Amendment rights (Dkt. 2 at 2); the government failed to provide him with a fair hearing and review (*id.*); the AO's "conclusions and how they were reached fly in the face of asylum law and the law regarding relief available under . . . the Convention Against Torture" (*id.* at 5); and the AO's and IJ's decisions "were without foundation in law, ignored applicable statutory provisions and regulations, violated international law and the treaty obligations of the United States, denied [him] substantive and procedural due process, [and] are fundamentally an abuse of discretion . . ." (*id.* at 8).  He also complains, more specifically, that the AO found he "was not credible and instead focused on a visa he previously applied for."  (*Id.* at 5.)  He alleges he is "not certain" whether he received the asylum pre-screening interview notes on July 16, 2019—several days before the Review Hearing—or at the beginning of the hearing. (*See id.* at 5-6.)  He alleges his "belief" that the IJ did not allow his attorney to fully participate in the hearing and contends this was a due process violation.  (*Id.* at 6.)  He also challenges the merits of the AO's and IJ's determinations by arguing that he is credible and met the nexus requirements for a positive credible fear finding.  (*Id.* at 5.)  Finally, he alleges that his detention is unlawful. (*Id.* at 7.)

The Government timely moved to dismiss.  (Dkts. 8 (redacted), 9 (sealed).)  The Government argues that the AO's interview satisfied the statutory and regulatory requirements by

1    following the proper procedures, applying the correct legal standards, and providing a fair hearing.

2    (*Id.* at 14.)  The Government also argues that the Court lacks jurisdiction to reweigh the evidence

3    or make factual findings, and that even if the Court has such jurisdiction, petitioner's claims fail

4    because the AO properly considered the totality of the circumstances in finding his testimony not

5    credible.  (*Id.* at 15-16.)  The Government further contends that the Review Hearing comported

6    with due process and that the Court does not have jurisdiction over petitioner's claim regarding

7    his right to an attorney during the hearing.  (*Id.* at 17-23.)  Finally, the Government asserts that

8    petitioner is properly detained.  (*Id.* at 23.)

9         In response, petitioner addresses only some of the Government's arguments.  (*See* Dkt. 12.)

10   Without discussion, he asserts that the Court has jurisdiction to review all his claims under

11   *Thuraissigiam v. U.S. Department of Homeland Security*, 917 F.3d 1097 (9th Cir. 2019), *cert.*

12   *granted*, 2019 WL 5281289 (Oct. 18, 2019).  (Dkt. 12 at 1.)  He argues that during the credible

13   fear interview, the AO focused on the wrong issues, failed to ask appropriate follow-up questions,

14   asked confusing questions, and failed to accept his answers regarding the Mann Party's ideology.

15   (*Id.* at 2-6.)  He also faults the AO for failing to check all the necessary boxes on Form I-870,

16   Record of Determination/Credible Fear Worksheet.  (*Id.* at 6.)  Petitioner asserts the AO and IJ

17   provided no analysis and did not have a reasonable basis for their decisions.  (*Id.* at 4, 6.)  He also

18   maintains that his testimony was credible and that he satisfies all requirements for a positive

19   credible fear finding.  (*Id.* at 4-6.)

20        The Government's reply addresses petitioner's new arguments.  (Dkt. 13.)  The

21   Government also submitted the Credible Fear Determination Checklist to rebut petitioner's claim,

22   raised for the first time in his response brief, that the AO and IJ did not have a reasonable basis for

23   their decisions.  (*See* Dkts. 13, 14, 14-1.)

REPORT AND RECOMMENDATION - 10

1

### III.    DISCUSSION

2

A.    Expedited Removal Proceedings

3      There is no dispute that petitioner is an "applicant for admission"—a noncitizen who

4  "arrive[d] in the United States," or is "present" in the United States but has "not been admitted."

5  8 U.S.C. § 1225(a)(1).  An applicant for admission who is unable to affirmatively show, to the

6  satisfaction of an immigration officer, that he or she "has been physically present in the United

7  States continuously for the 2-year period immediately prior to the date of the determination of

8  inadmissibility," 8 U.S.C. § 1225(b)(1)(A)(iii)(II), is generally subject to an expedited removal

9  process that does not include a hearing before an IJ or review of the removal order, 8 U.S.C. §

10  1225(b)(1)(A)(i).  If, however, the noncitizen "indicates either an intention to apply for asylum    .

11  . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an

12  interview with an asylum officer.  8 U.S.C. § 1225(b)(1)(A)(ii); *see also* 8 C.F.R. §§ 235.3(b)(4),

13  208.30(d).

14      The asylum officer interviews the noncitizen, reviews relevant facts, and determines

15  whether the noncitizen has a credible fear.  *See* 8 U.S.C. § 1225(b)(1)(B); 8 C.F.R. § 208.30.  The

16  purpose of the interview is to "elicit all relevant and useful information bearing on whether the

17  applicant has a credible fear of persecution or torture."  8 C.F.R. § 208.30(d).  The asylum officer

18  must conduct the interview in a nonadversarial manner and in a language chosen by the noncitizen.

19  8 C.F.R. §§ 208.30(d), (d)(5).  At the time of the interview, the asylum officer must verify that the

20  noncitizen has received Form M-444, Information about Credible Fear Interview in Expedited

21  Removal Cases, and understands the credible fear determination process.  8 C.F.R. § 208.30(d)(2).

22  The noncitizen may present evidence and consult with any person of his or her choosing prior to

23  the interview, at no expense to the government, so long as it does not unreasonably delay the

1  process, and any person with whom the noncitizen consults may be present at the interview.  8

2  C.F.R. § 208.30(d)(4).  The asylum officer must create a summary of the material facts presented

3  by the noncitizen.  8 C.F.R. § 208.30(d)(6).  At the end of the interview, the officer must review

4  the summary with the noncitizen and give him or her an opportunity to correct any errors.  8 C.F.R.

5  § 208.30(d)(6).

6       A credible fear of persecution or torture is established where there is a "significant

7  possibility," taking into account the credibility of the noncitizen's testimony and other facts known

8  to the asylum officer, that the noncitizen could establish eligibility for asylum under 8 U.S.C. §

9  1158, withholding of removal under 8 U.S.C. § 1231(b)(3), or withholding or deferral of removal

10  under the Convention Against Torture.  8 C.F.R. §§ 208.30(e)(2), (3); *see* 8 U.S.C. §

11  1225(b)(1)(B)(v).  The noncitizen's testimony may be sufficient to sustain his or her burden of

12  proof if it is "credible, is persuasive, and refers to specific facts sufficient to demonstrate that the

13  applicant is a refugee."  8 U.S.C. § 1158(b)(1)(B)(ii) (credibility standard applicable under 8

14  U.S.C. § 1225(b)(1)(B)(v)).  Considering the totality of the circumstances and all relevant factors,

15  an asylum officer may base a credibility determination on:

16      the demeanor, candor, or responsiveness of the applicant or witness, the inherent
plausibility of the applicant's or witness's account, the consistency between the

17  applicant's or witness's written and oral statements (whenever made and whether
or not under oath, and considering the circumstances under which the statements

18  were made), the internal consistency of each such statement, the consistency of
such statements with other evidence of record (including the reports of the

19  Department of State on country conditions), and any inaccuracies or falsehoods in
such statements, without regard to whether an inconsistency, inaccuracy, or

20  falsehood goes to the heart of the applicant's claim, or any other relevant factor.

21  8 U.S.C. § 1158(b)(1)(B)(iii).

22       After the interview, the asylum officer creates "a written record of his or her determination,

23  including a summary of the material facts as stated by the applicant, any additional facts relied on

by the officer, and the officer's determination of whether, in light of such facts, the [noncitizen] has established a credible fear of persecution or torture."  8 C.F.R. § 208.30(e)(1); *see* 8 U.S.C. § 1225(b)(1)(B)(iii)(II).  A supervisory asylum officer must review the determination before USCIS issues it.  *See* 8 C.F.R. §§ 208.30(e)(7), 235.3(b)(2), (b)(7).

If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum."  8 U.S.C. § 1225(b)(1)(B)(ii).  If the officer determines that the noncitizen does not have a credible fear of persecution, the officer shall order the noncitizen "removed from the United States without further hearing or review," unless the noncitizen requests review by an IJ.  8 U.S.C. §§ 1225(b)(1)(B)(iii)(I), (III).  Review by an IJ is *de novo* and must include an opportunity for the noncitizen to be heard and questioned by the IJ, who also may take into evidence any relevant oral or written statement.  8 U.S.C. § 1225(b)(1)(B)(iii)(III); 8 C.F.R. §§ 1003.42(c), (d).  The noncitizen may consult with a person of his or her choosing prior to the review, at no expense to the government and so long as it does not "unreasonably delay the process."  8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 1003.42(c).  The review hearing "shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination . . . ."  8 U.S.C. § 1225(b)(1)(B)(iii)(III); *see* 8 C.F.R. § 1003.42(e).  If the IJ determines that the noncitizen does not have a credible fear of persecution or torture, the IJ affirms the asylum officer's determination and remands the case to DHS for execution of the expedited removal order.  8 C.F.R. 1003.42(f) ("No appeal shall lie from a review of an adverse credible fear determination made by an immigration judge.").

Any noncitizen subject to these provisions "shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."  8 U.S.C. §

1    1225(b)(1)(B)(iii)(IV).

2    B.      Judicial Review of Expedited Removal Orders

3              Congress has limited juridical review of expedited removal orders: "Without regard to the

4    nature of the action or claim and without regard to the identity of the party or parties bringing the

5    action, no court may . . . enter declaratory, injunctive, or other equitable relief in any action

6    pertaining to an order to exclude [a noncitizen] in accordance with section 1225(b)(1) of this title

7    except as specifically authorized in [8 U.S.C. § 1252(e)] . . . ."  8 U.S.C. § 1252(e)(1)(A).

8              Section 1252(e)(2) permits judicial review of expedited removal orders through habeas

9    proceedings but limits review to determinations of:

10             (A) whether the petitioner is [a noncitizen],

11             (B) whether the petitioner was ordered removed under [§ 1225(b)(1)], and

12             (C) whether the petitioner can prove by a preponderance of the evidence that the
               petitioner is [a noncitizen] lawfully admitted for permanent residence . . . .

13   8 U.S.C. § 1252(e)(2); *see* 8 U.S.C. § 1252(a)(2)(A) (limiting judicial review of expedited removal

14   orders to the exceptions provided in § 1252(e)).[2]  The scope of the inquiry allowed under §

15   1252(e)(2)(B) is "limited to whether such an order in fact was issued and whether it relates to the

16   petitioner.  There shall be no review of whether the [noncitizen] is actually inadmissible or entitled

17   to any relief from removal."  8 U.S.C. § 1252(e)(5).  If a violation is found, the only allowable

18   relief is a removal hearing pursuant to 8 U.S.C. § 1229a.  8 U.S.C. § 1252(e)(4)(B).

19             Section 1252(e)(3), titled "Challenges on validity of the system," limits jurisdiction as

20   follows:

21             Judicial review of determinations under section 1225(b) of this title and its

22   ────────────────────

23         [2] In addition, the Ninth Circuit has allowed due process claims collaterally attacking expedited removal orders
     in criminal cases where the noncitizen is charged with criminal reentry.  *Pena v. Lynch*, 815 F.3d 452, 455-56 (9th
     Cir. 2015); *United States v. Raya-Vaca*, 771 F.3d 1195, 1202-1207 (9th Cir. 2014).  This exception is "strictly limited"
     to criminal reentry cases, *Pena*, 815 F.3d at 456, and therefore it is inapplicable here.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A); *see United States v. Barajas-Alvarado*, 655 F.3d 1077, 1086 n.10 (9th Cir. 2011) (declining to address "general attacks on the expedited removal process" because they were barred by § 1252(e)(3)); *Li v. Eddy*, 259 F.3d 1132, 1136 (9th Cir. 2001) ("systemic challenges are to be filed in the District of Columbia, and within 60 days of promulgation of the expedited removal procedures"), *vacated as moot*, 324 F.3d 1109 (9th Cir. 2001).[3]

In *Thuraissigiam v. U.S. Department of Homeland Security*, 917 F.3d 1097 (9th Cir. 2019), *cert. granted*, 2019 WL 5281289 (Oct. 18, 2019), the Ninth Circuit held that § 1252(e)(2) violates the Suspension Clause. The petitioner sought to challenge the procedures leading to his expedited removal order, including that the asylum officer and IJ on review "failed to elicit all relevant and useful information" bearing on whether he had a credible fear of persecution or torture, and "failed to consider relevant country conditions evidence." *Id.* at 1102. The core of his claim was that "the government failed to follow the required procedures and apply the correct legal standards when evaluating his credible fear claim." *Id.* at 1116. The district court dismissed for lack of subject matter jurisdiction. *Id.* at 1102. The Ninth Circuit reversed, concluding that § 1252(e)(2) did not authorize jurisdiction over the petitioner's claims but that the Suspension Clause required him to have a "meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous

---

[3] *See Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1141 n.4 (9th Cir. 2008) (although "*Li* was vacated on mootness grounds . . . the case is analytically sound").

REPORT AND RECOMMENDATION - 15

1    application or interpretation' of relevant law." *Id.* at 1100 (quoting *Boumediene v. Bush*, 553 U.S.

2    723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001))).  The court did not decide

3    "what right or rights [the petitioner] may vindicate via use of the writ," but remanded to the district

4    court to exercise jurisdiction over the petitioner's "legal challenges to the procedures leading to

5    his expedited removal order."[4]  *Id.* at 1119.

6    C.    Petitioner's Claims

7         Petitioner challenges aspects of the credible fear interview, the AO's and IJ's negative

8    credible fear decisions, the Review Hearing, and his custody.  The Court will discuss these issues

9    in turn below.[5]

10            1.    *Credible Fear Interview*

11        Petitioner argues that the AO violated his rights by: focusing on the wrong issues, namely

12   his March 2019 visa application and Ms. Kaur's petition on his behalf; failing to ask appropriate

13   follow-up questions regarding why he left Canada and his fear of return to India; asking confusing

14   questions, particularly regarding the Mann Party's ideology; and refusing to accept his answers to

15   the questions regarding the Mann Party.  (*See* Dkt. 2 at 5; Dkt. 12 at 2-5.)  The Government

16   concedes that these claims arguably fall within the purview of *Thuraissigiam* and therefore does

17   not challenge the Court's jurisdiction over them. (Dkt. 13 at 6.)  The Government argues, however,

18   that the record does not support petitioner's claims.  (*Id.* at 6-9.)

19

20

21    _____

22            [4] The Ninth Circuit expressly stated that it did not consider whether the Suspension Clause requires judicial review of the merits of the credible fear determination or factual challenges to an expedited removal order. *Thuraissigiam*, 917 F.3d at 1117 n.20, 1119 n.24.

23            [5] Petitioner also makes general allegations of wrongdoing on the part of the Government and suggests that he may have received late service of one document but is "not certain."  (*See generally* Dkt. 2.)  These bare, unsupported claims are insufficient to entitle him to habeas relief and will not be discussed further.

The Court agrees with the Government.  Contrary to petitioner's claims, the AO did not focus on the wrong issues; he fully explored petitioner's alleged fear of return to India and properly discussed petitioner's visa application and Ms. Kaur's petition because these raised red flags regarding petitioner's credibility.  The AO also asked appropriate follow-up questions.  While petitioner points to questions the AO could have asked but did not, he does not present any information the AO failed to elicit or dispute that the AO gave him an opportunity add any additional information to the record he believed was important.  Petitioner's complaints regarding confusing questions are likewise baseless.  The AO rephrased one question when petitioner expressed confusion, and petitioner confirmed at the end of the interview that he had understood the AO's questions.  Finally, the AO did not improperly question petitioner regarding the Mann Party.  Petitioner's understanding of the Mann Party's ideology was directly relevant to the credibility of his claim that he was attacked because he worked for the party.  Petitioner fails to raise any issue with the credible fear interview, much less an issue that would entitle him to habeas relief.

2. *Negative Credible Fear Decisions*

Petitioner raises two challenges to the negative credible fear decisions, neither of which prevail.  First, he argues that the AO and IJ did not engage in a reasoned analysis and rejected his claim arbitrarily.  The Government concedes that this claim is arguably procedural and therefore the Court has jurisdiction under *Thuraissigiam*.  (*See* Dkt. 13 at 6.)  The Government nevertheless argues that this claim fails because the AO fully explained his reasoning in the Credible Fear Determination Checklist, which was given to the IJ prior to the Review Hearing.  The Court agrees that the Credible Federal Determination Checklist, summarized above, establishes that the AO and

1    IJ had a reasonable basis for rejecting petitioner's claims. Petitioner's assertion to the contrary

2    thus fails.

3    Second, petitioner directly challenges the merits of the AO's and IJ's negative credible fear

4    determinations, arguing that he testified credibly and established a credible fear of return to India.

5    But as the Government contends, *Thuraissigiam* did not establish that the Suspension Clause

6    requires judicial review of the merits of a credible fear determination. *Thuraissigiam*, 917 F.3d at

7    1117 n.20, 1119 n.24 (expressly stating that the court did not consider whether the Suspension

8    Clause requires judicial review of the merits of the credible fear determination or factual challenges

9    to an expedited removal order); *Lopez-Mendoza v. Barr*, No. 19-1448, 2019 WL 6710861, at \*5

10   (C.D. Cal. Sept. 11, 2019) (finding no jurisdiction under *Thuraissigiam* to consider challenges to

11   an IJ's factual determinations or to reweigh the evidence). Under the present scope of

12   *Thuraissigiam*, the Court does not have jurisdiction over petitioner's challenge to the merits of

13   AO's finding that he was not credible and the IJ's affirmance of this decision. These claims should

14   be dismissed.

15       3.    *Credible Fear Review Hearing*

16   Petitioner alleges a due process violation because the IJ did not allow his attorney to fully

17   participate in the Review Hearing. (Dkt. 2 at 6.) There is no right to counsel in expedited removal

18   proceedings. *See United States v. Barajas-Alvarado*, 655 F.3d 1077, 1084 (9th Cir. 2011) (non-

19   admitted noncitizens who have not entered the United States do not have a right to representation

20   in expedited removal proceedings); *United States v. Grande*, 623 Fed. Appx. 858, 860 (9th Cir.

21   2015) (noncitizen apprehended after crossing the border was "not entitled to representation by

22   counsel during his expedited removal proceeding"). As discussed above, the statute only allows a

23   noncitizen to consult with a person of his or her choosing prior to the Review Hearing, provided

1   the consultation is "at no expense to the Government" and does not "unreasonably delay the

2   process." 8 U.S.C. § 1225(b)(1)(B)(iv); *see* 8 C.F.R. § 1003.41(c). Petitioner does not allege a

3   violation of these provisions. To the extent he challenges the statutory scheme's omission of the

4   right to counsel in expedited removal proceedings, the Court does not have jurisdiction to consider

5   such claims under 8 U.S.C. § 1252(e)(3).

6          4.     *Custody*

7          Petitioner has been detained since June 2019 and seeks release on bond. The expedited

8   removal statute provides for his mandatory detention until he is removed. 8 U.S.C. §

9   1225(b)(1)(B)(iii)(IV); *see Ms. L. v. U.S. Imm. & Customs Enforcement*, 302 F. Supp. 3d 1149,

10  1159 n.3 (S.D. Cal. 2018) ("Individuals in the expedited removal process who have not been found

11  to have a 'credible fear of persecution' for asylum purposes are subject to mandatory detention.").

12  Under the statute and regulations, he may be released only if he is granted parole, i.e., released

13  under narrowly prescribed circumstances, such as "urgent humanitarian reasons or significant

14  public benefit[,]" 8 U.S.C. § 1182(d)(5)(A), medical emergency, or a "legitimate law enforcement

15  objective," 8 C.F.R. § 235.3(b)(2)(iii). The only impediment to petitioner's removal is the stay

16  entered in this case. Petitioner fails to establish that his detention, which is currently just over six

17  months and is likely to end with his removal shortly after this case is dismissed, violates the Fourth

18  Amendment, as he alleges, or his Fifth Amendment due process rights. Thus, this claim should be

19  dismissed.

20                         IV.    <u>CONCLUSION</u>

21         The Court recommends that the Government's motion to dismiss (Dkts. 8 (redacted), 9

22  (sealed)) be GRANTED, petitioner's habeas petition (Dkt. 2) be DENIED, the stay of removal

23

(Dkt. 4) be VACATED, and this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 24, 2020**.

Dated this 3rd day of January, 2020.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 20